**Gary S. WHITBY, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. 77462.**

Supreme Court of Missouri,
En Banc.

April 25, 1995.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Spillars, Gretchen Garrison, Asst. Attys. Gen., Jefferson City, for appellant.

Daniel R. Dunham, Danieal H. Miller, Columbia, for respondent.

COVINGTON, Chief Justice.

The Director of Revenue assessed Gary S. Whitby for unpaid sales tax of Level Eight, Inc. The Administrative Hearing Commission held that Whitby was not liable for the assessment because he did not have direct control, supervision, or responsibility for filing returns or paying the tax. Reversed and remanded.

The facts are not in dispute. In 1989, Whitby and Garland Middendorf formed Level Eight, Inc., a subchapter S corporation, for the purpose of operating a restaurant in Columbia, Missouri. Middendorf was to supply the necessary capital and tend to the financial affairs of the business while Whitby was to manage the restaurant's day-to-day operations. Middendorf initially held 48.5 percent of the corporate stock and Whit-

by, jointly with his wife, held 46.5 percent, with a third party brought into the corporation by Whitby holding the remaining five percent. Whitby, Middendorf, Middendorf's wife, and the third shareholder constituted the corporation's board of directors.

Whitby was the president of the corporation. The corporate bylaws, which Whitby signed at the time of incorporation, provided that the president was to "control the business, property and affairs" of the corporation and "perform duties incident to his office." Middendorf was the treasurer of the corporation. The treasurer's duties included "control and custody of the funds" of the corporation, disbursement of the corporation's funds and securities, and "all duties incident to the office of Treasurer."

Whitby signed the corporation's tax registration application and surety bond and delivered them to the Department of Revenue. After the restaurant opened in January of 1990, Whitby deposited the daily receipts, including sales tax, into the corporation's checking account. Until December of 1990, Whitby paid the restaurant's bills and maintained possession of the corporate checkbook, although Middendorf directed Whitby when and how much to pay creditors. On several occasions, Whitby refused to sign checks when he knew the checking account contained insufficient funds.

At Middendorf's direction, Whitby hired an accounting firm. The accounting firm prepared the corporation's monthly sales tax returns for Whitby's signature. Whitby's practice was to sign each return and forward it, along with a check drawn on the corporation's account for the amount of sales tax due, to the Department of Revenue. At some point in 1990 the corporation ceased using the accounting firm. From then until the restaurant ceased operations in September of 1991, Middendorf's accountant prepared the returns and checks for Whitby's signature.

Almost immediately upon commencing operations, the corporation fell behind in payment of sales tax. Whitby received the director's notices that the corporation owed tax. On several occasions, the corporation filed sales tax returns, bearing Whitby's signature, without paying tax. In April of 1991, Middendorf directed Whitby to pick up a check from Middendorf's accountant and deliver it to the Department of Revenue in partial payment of delinquent sales taxes. Whitby called the corporation's bank to determine whether the checking account had sufficient funds to cover the approximately $7,000 check and learned that it did not. Whitby refused to sign the check prepared by the accountant. Middendorf then directed the accountant to prepare and sign a check in the same amount drawn on an account held by Middendorf Properties. Whitby delivered this check to the department, along with a letter requesting a partial payment plan.

In May of 1991, Middendorf, on behalf of the corporation, reached an agreement with the director for payment, in twelve monthly installments, of delinquent sales tax for the period May, 1990, through March, 1991. Middendorf told Whitby of the arrangement, and Whitby signed checks in payment of the agreement.

Whitby called the Department of Revenue in June of 1991 to inquire whether the corporation was meeting its obligations under the agreement. On that occasion, Whitby was informed that the department still awaited sales tax returns for April and May of 1991. Whitby called back later that day to inform the department that the April return had already been mailed. Whitby also gave the director the sales tax figures for May over the telephone at that time. The next day, Whitby called the department and learned that the April return had been received. Later that day, Whitby delivered to the department the May return, bearing his signature, and a cashier's check.

The corporation filed a sales tax return for June of 1991 but did not pay the tax. The corporation did not file returns or pay tax for July, August, or September of 1991. The director assessed the corporation for the amounts due, but the corporation did not pay. The restaurant ceased operations in September of 1991. In June of 1992, the corporation was administratively dissolved.

On October 7, 1992, the director sent Whitby a letter indicating that the corporation still had unpaid sales tax liability. The letter indicated that the director was authorized by statute to assess the liability against those who were responsible for failure to collect or pay the tax. The letter stated that Whitby, as the corporation's president, might be such a person because he had the authority to participate in the corporation's financial decisions.

On August 11, 1993, the director determined that Whitby was liable for the corporation's unpaid sales taxes and issued Whitby an assessment in the amount of $38,001.96. This amount included tax, additions, interest, and fees, but no penalties.

Whitby filed a complaint seeking the Administrative Hearing Commission's redetermination of the director's decision. The commission concluded that Whitby had no direct control, supervision, or responsibility for the filing of returns or the payment of taxes and was, therefore, not liable. The director petitioned this Court to review the decision of the commission pursuant to § 621.189, RSMo 1994.

■ The director first contends that the commission erred in ruling that § 144.157.1, RSMo Supp.1991,[1] is inapplicable to the present case. The director's contention is incorrect. Section 144.157.1 provides that certain persons are "liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." The director's assessment reflected that Whitby was liable "for the unpaid sales tax" of the corporation, not for a penalty. Furthermore, the assessment details the amounts attributable to taxes, additions, interest, and lien filing fees. In the "penalty" category, the assessment lists the amount as "$0.00." The director did not attempt to assess a penalty under § 144.157.1; the director assessed a tax pursuant to § 144.157.3.

The director next asserts that the commission erred in concluding that Whitby did not have "the direct control, supervision or re-

sponsibility for filing returns and making payment" of sales tax necessary for liability under § 144.157.3. The commission's decision must be affirmed if it is supported by the law and competent and substantial evidence on the whole record and is not clearly contrary to the intent of the legislature. § 621.193, RSMo 1994; *House of Lloyd v. Director of Revenue,* 824 S.W.2d 914, 916 (Mo. banc 1992).

Section 144.157.3 provides:

3. Any officers, directors, statutory trustees or employees of any corporation, including administratively dissolved corporations or foreign corporations that have had their certificate of authority revoked, subject to the provisions of sections 144.010 to 144.745, who has the direct control, supervision or responsibility for filing returns and making payment of the amount of tax imposed in accordance with sections 144.010 to 144.745, and who fails to file such return with the director of revenue shall be personally assessed for such amounts, including interest, additions to tax and penalties thereon. This assessment shall be imposed only in the event that the assessment on the corporation is final, and such corporation fails to pay such amounts to the director of revenue. Notice shall be given of the director of revenue's intent to make the assessment against such officers, directors, statutory trustees or employees. The personal liability of such officers, directors, statutory trustees or employees as provided in this section shall survive the administrative dissolution of the corporation or, if a foreign corporation, the revocation of the corporation's certificate of authority.

Section 144.157.3 does not define "direct." To ascertain the intent of the legislature, this Court considers words used in statutes in their plain and ordinary meaning. *Alpha One Properties, Inc. v. State Tax Comm'n,* 887 S.W.2d 390, 391 (Mo. banc 1994). The plain and ordinary meaning of the term "direct" includes "[w]ithout intervening persons, conditions, or agencies; immediate," *Ameri-*

---

**1.** For the purposes of the present case, § 144.157, RSMo Supp.1991, is substantially identical to RSMo Supp.1990. The 1991 amend-

ments to the statute have no effect on the disposition of this case. Further citations to § 144.157 are to RSMo Supp.1991.

*can Heritage Dictionary* 400 (2d college ed. 1982), and "stemming immediately from a source," *Webster's Third New International Dictionary* 640 (1966) (citing, as an example, direct authority).

The commission concluded:

> Whitby was directly responsible only for getting the restaurant ready to open and then the day-to-day preparation and serving of food and beverage, supervision of employees, collection of receipts including sales tax, and their deposit into the corporation's account. The filing of sales tax returns and remitting of payments to the Director was under the direct control of Middendorf.

The facts found by the commission do not support its conclusion. Whitby was the president of the corporation and managed the restaurant operation. He signed the corporation's tax registration application and the surety bond. He received the director's notices when the corporation's tax payments were overdue. He signed checks in payment of the tax liability. He signed monthly sales tax returns, which indicated immediately above the signature block the following: "UNDER PENALTIES OF PERJURY, I DECLARE I HAVE EXAMINED THIS RETURN AND ACCOMPANYING SCHEDULES AND TO THE BEST OF MY BELIEF THEY ARE TRUE AND ACCURATE." Whitby contacted the Department of Revenue to inquire whether the corporation was meeting its obligations under the payment agreement. The facts found by the commission reveal that Whitby had personal, direct control over and responsibility for the filing of returns and the payment of tax for purposes of § 144.157.3.

Whitby responds, and the commission found, that Middendorf had direct control over the corporation's filing of sales tax returns and payment of tax. That finding is not contrary to the holding in this case. Section 144.157.3 provides that any "officers, directors, statutory trustees or employees" having "direct control, supervision or responsibility for filing returns and making payments" of a corporation's sales tax may be liable. By its use of the plural "officers, directors, statutory trustees or employees,"

the legislature expressed its intent that more than one person might have control over compliance with the sales tax laws. More than one person, therefore, may be liable for the payment of a corporation's unpaid sales tax. Irrespective of Middendorf's role, Whitby possessed and exercised the necessary control and responsibility.

The decision of the commission is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.